# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID RYAN UNRUH,<br><br>        Petitioner,<br><br>        v.<br><br>FRANCISCO JACQUEZ, Acting Warden,<br><br>        Respondent. | NO. CV 08-00974 GW (SS)<br><br>**ORDER ADOPTING FINDINGS,**<br><br>**CONCLUSIONS AND RECOMMENDATIONS**<br><br>**OF UNITED STATES MAGISTRATE JUDGE** |

    Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, all of the records and files herein, the Magistrate Judge's Report and Recommendation, and Petitioner's Objections. After having made a <u>de novo</u> determination of the portions of the Report and Recommendation to which Objections were directed, the Court concurs with and adopts the findings, conclusions and recommendations of the Magistrate Judge. However, the Court addresses Petitioner's Objections below.

    In his Objections to the Report, Petitioner argues that the Magistrate Judge applied the wrong legal standard by focusing on Petitioner's conduct instead of the victim's to assess the "sufficiency

1  of the evidence supportive of the objective component of voluntary
2  manslaughter (provocation)." (Objections at 2; see also id. at 8-9).
3  As noted by Petitioner, "the objective component of voluntary
4  manslaughter (provocation) depends exclusively on the victim's
5  behavior." (Id. at 2); see also People v. Manriquez, 37 Cal. 4th 547,
6  583, 36 Cal. Rptr. 3d 340 (2005) ("The provocation which incites the
7  defendant to homicidal conduct in the heat of passion must be caused by
8  the victim.").

10  The Magistrate Judge clearly relied on the victim's behavior to
11  conclude that the jury could have reasonably found that "the
12  provocation, such as it was, was insufficient to cause an ordinary
13  person of average disposition to act rashly or without due deliberation
14  and reflection." (Report and Recommendation ("R&R") at 17) (internal
15  quotation marks omitted). As set forth in the Report, (see id. at 16-
16  17), the victim suggested that Petitioner go to Texas alone, (see 1 RT
17  198-99), the victim offered to return the rings and necklace Petitioner
18  had given her, (see 1 RT 201-02), and the victim removed her rings and
19  necklace. (See 1 RT 201). Based on this conduct by the victim, the
20  jury could have reasonably concluded that the evidence of provocation
21  was insufficient. See, e.g., People v. Marshall, 13 Cal. 4th 799, 848,
22  55 Cal. Rptr. 2d 347 (1996) ("[The witness's] testimony, that at some
23  point before the crimes defendant was concerned [the victim] was
24  planning to leave him, fails to demonstrate defendant was under the heat
25  of passion at the time of the offense. . . . We are directed to no
26  authority that the existence of marital problems, without more, warrants
27  a heat of passion instruction.").

Petitioner further argues that the Magistrate Judge improperly relied on transferred intent and Petitioner's conduct after shooting the victim to find sufficient evidence of malice. (See Objections at 3, 9-11). However, the Magistrate Judge clearly relied on the fact that Petitioner pointed the gun at the victim and fired to find sufficient evidence of malice. (See R&R at 17) ("This, alone, constitutes sufficient evidence of malice to sustain the verdict, especially given the deference required on habeas review."); (see also 1 RT 213-15). Indeed, "[t]he act of firing toward a victim at a close, but not point blank range in a manner that could have inflicted a mortal wound had the bullet been on target is sufficient to support an inference of intent to kill." People v. Chinchilla, 52 Cal. App. 4th 683, 690, 60 Cal. Rptr. 2d 761 (1997) (internal quotation marks omitted).

Next, Petitioner argues that the Magistrate Judge applied the wrong legal standard to determine the likelihood of great bodily injury required under California's child endangerment statute. (See Objections at 3-4, 11-14). As noted in the Report, (see R&R at 19), however, this Court is bound by the court of appeal's interpretation of the statute as requiring proof of less than fifty percent that great bodily injury would occur. In California, child endangerment is a felony if the acts or omissions constituting the endangerment involve "circumstances or conditions likely to produce great bodily harm or death" to the child. Penal Code § 273a(a); see also People v. Burton, 143 Cal. App. 4th 447, 454 n.4, 49 Cal. Rptr. 3d 334 (2006). In reviewing Petitioner's appeal, the court of appeal examined the quoted statutory language and held that it did not require proof that the chances of great bodily harm were greater than fifty percent. (Lodgment 9 at 12-15). Regardless, the

Report sets forth ample evidence from which the jury could have reasonably found that Petitioner's actions were likely to result in great bodily injury, even under Petitioner's "more probable than not" standard (proof greater than fifty percent). (See R&R at 20).

Moreover, the trial court never quantified for the jury the likelihood of great bodily injury required to find Petitioner guilty of felony child endangerment. Rather, the trial court instructed the jury pursuant to CALJIC No. 9.37 that the crime of felony child endangerment required proof that Petitioner's "conduct occurred under circumstances likely to produce great bodily harm or death." (CT 140). The trial court did not further define the term "likely," except as provided in CALJIC No. 9.37:

> If a child is placed in a situation likely to produce great bodily harm or death, it is not necessary that actual bodily injury occur in order to constitute the offense. However, if great bodily injury does occur, its nature and extent are to be considered in connection with all the evidence in determining whether the circumstances were likely to produce great bodily harm or death.

(Id.).

In the absence of a definition from the trial court, the jury would have understood the term "likely" consistent with its ordinary usage to mean "probable" or "more probable than not." People v. Savedra, 15 Cal. App. 4th 738, 744, 19 Cal. Rptr. 2d 115 (1993) ("[I]n ordinary usage and

4

1  in many legal contexts 'likely' means 'probable' or . . . 'more probable
2  than not.'"). Thus, if the jurors followed the instructions and applied
3  ordinary usage to the term "likely", the jurors found that the
4  likelihood of great bodily injury was greater than fifty percent. <u>See</u>
5  <u>Weeks v. Angelone</u>, 528 U.S. 225, 234, 120 S. Ct. 727, 145 L. Ed. 2d 727
6  (2000) ("A jury is presumed to follow its instructions."). Accordingly,
7  any error in the standard of proof to determine the likelihood of great
8  bodily injury was harmless under the <u>Brecht</u> standard. <u>See</u> <u>People v.</u>
9  <u>Chaffin</u>, 173 Cal. App. 4th 1348, 1353, 93 Cal. Rptr. 3d 531 (2009)
10 ("[T]he failure to give an instruction on the legal definition of
11 'likely' could not have been prejudicial to defendant since the factual
12 question posed by the omitted definition was resolved adversely to
13 defendant under the other, properly given, instruction."); <u>see also</u>
14 <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d
15 353 (1993). Accordingly, the Objections do not cause this Court to
16 reject or modify the findings in the Report and Recommendation.
17 \\
18 \\
19 \\
20 \\
21 \\
22 \\
23 \\
24 \\
25 \\
26 \\
27 \\
28 \\

IT IS ORDERED THAT:

1. The Petition is DENIED and Judgment shall be entered dismissing this action with prejudice; and

2. The Clerk shall serve copies of this Order and the Judgment herein by United States mail on counsel for Petitioner and counsel for Respondent.

DATED: November 1, 2010

*George H. Wu*

GEORGE H. WU
UNITED STATES DISTRICT JUDGE